IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ROBERT JOHNSON, JR.                                              PLAINTIFF

VS.                          CIVIL NO. 04-4145

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION          DEFENDANT

## MEMORANDUM OPINION

Robert Johnson, Jr. (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income benefits ("SSI"), under Title XVI of the Act.

**Background:**

The application for SSI now before this court was filed on April 12, 2002, alleging an onset date of July 15, 1999, due to osteoarthritis, degenerative changes in the left knee, and sleep apnea. (Tr. 29, 71). An administrative hearing was held on April 1, 2004. (Tr. 169-201). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, on April 1, 2004, plaintiff was forty-five years old and possessed a high school education with one year of college credit. (Tr. 172). The record reveals that he had past relevant work ("PRW"), as a warehouse worker, carpenter, tree trimmer, security guard, and security supervisor. (Tr. 58, 195-196).

On July 29, 2004, the Administrative Law Judge ("ALJ"), found that plaintiff had severe impairments, but that those impairments did not meet or equal the criteria of any of the impairments

AO72A
(Rev. 8/82)

listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ("RFC"), to perform a range of sedentary work, limited by his ability to stand and walk only two hours per day; occasionally balance and kneel; and, inability to climb, stoop, crouch, or crawl. (Tr. 18). He then determined that plaintiff's RFC precluded him from performing any of his PRW. However, with the assistance of a vocational expert ("VE"), the ALJ found that plaintiff could perform the positions of insurance claims clerk or personnel clerk and beverage order clerk. (Tr. 197-198).

On September 17, 2004, the Appeals Council declined to review this decision. (Tr. 5-8). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

AO72A
(Rev. 8/82)

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevent him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in

light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's failure to obtain an RFC assessment from plaintiff's treating physician. In the present case, the evidence indicates that plaintiff fell from a ladder in July 1999, fracturing his right leg in approximately fifteen places. (Tr. 178). He then underwent at least two surgeries to reconstruct his leg. Further, in 2001, the hardware used to reconstruct his leg migrated into his knee joint, necessitating a third surgery to remove the hardware. (Tr. 93). Following the surgery, plaintiff was noted to have done well. (Tr. 88-89). However, in February 2002, Dr. Haitham Elsamaloty noted that he had a decreased range of motion in his right knee, and was unable to ambulate. (Tr. 86). X-rays revealed evidence of significant degenerative osteoarthritis involving the right knee. (Tr. 87). Plaintiff was diagnosed with post-traumatic arthritis, and prescribed Motrin, Ultram, and Vicodin. The doctor noted that he would recommend both disability and a handicap placard. (Tr. 86).

On April 3, 2002, plaintiff was again treated for right knee pain. (Tr. 96). He was noted to be obese, and to have tenderness in his right knee. However, no edema was noted. The doctor prescribed Vicodin and Motrin. (Tr. 96).

On June 12, 2002, plaintiff was examined by Dr. Tanvir Qureshi. (Tr. 97). Plaintiff complained of occasional swelling in the leg and right knee pain. He stated that he could walk up to 1/4 mile before he had to rest. In addition, plaintiff complained of pain in his left shoulder area,

4

with associated numbness in the left arm, as well as occasional back pain. On examination, Dr. Qureshi noted some bony swelling of the right knee, with the right knee being significantly larger than the left. Further, the right knee was tender to touch, and had limited movement. Dr. Qureshi also found that heel, toe, and tandem walking was difficult for plaintiff and caused pain and loss of balance. Standing up after sitting on the floor was also problematic for plaintiff because he could not bend his knee. Plaintiff's straight leg raising was only possible to fifty degrees bilaterally, while movement at his hip was normal. Therefore, Dr. Qureshi diagnosed plaintiff with advanced osteoarthritis of the right knee with significant functional limitation, osteoarthritis or rotator cuff injury of the left shoulder with significant functional limitations, and moderate exogenous obesity. (Tr. 98).

On January 26, 2003, plaintiff complained of right knee pain. (Tr. 109). He stated that ambulation made his pain worse, rating it as an eight on a scale of one to ten. On examination, pitting edema was noted over his right knee. (Tr. 111). The doctor prescribed Lorcet, Flexeril, and Ibuprofen. (Tr. 112).

On March 20, 2003, plaintiff reported that his knee pain was "killing him." (Tr. 118). Dr. Patrick Konitzer noted a pronounced limp and a brace on plaintiff's right knee. The doctor diagnosed plaintiff with bilateral osteoarthritis of the knees. He then wrote plaintiff a prescription for Vicodin ES, and had him sign a narcotics contract. Dr. Konitzer also arranged for plaintiff to consult with Dr. Chris Alkire. Further, he briefly spoke with plaintiff regarding the importance of weight loss and smoking cessation. (Tr. 118).

5

On May 1, 2003, plaintiff continued to complain of right knee pain. (Tr. 125). He stated that he had been told by numerous doctors that he was in need of a knee replacement. However, because of his youth and activity level, as reported by plaintiff, plaintiff refused this treatment. X-rays of the knee showed complete loss of the articular joint space with what looked like a healed proximal tibia plateau fracture. There was no joint space in either the medial or lateral sides of the knee. Further, an examination revealed tenderness to palpation about the knee, and a well-healed scar across the anterior aspect of the knee joint. Accordingly, Dr. Alkire concluded that knee replacement surgery was not a reasonable possibility, due to plaintiff's age and weight. He then recommended injections, and gave plaintiff his first injection at that time. Dr. Alkire also noted the he might consider Synvisc treatments, if Medicaid would allow them. (Tr. 125).

On May 22, 2003, plaintiff returned for a follow-up with Dr. Alkire regarding his severe arthritis of the knee. (Tr. 123). Notes also indicate that plaintiff's Medicaid would not pay for his Synvisc. As such, plaintiff stated that he would just live with the pain. He indicated that he did not want surgery unless it was a last resort, and Dr. Alkire agreed. Dr. Alkire stated that he could occasionally give plaintiff a cortisone shot, and warned plaintiff to be "very judicious in taking narcotic pain medicine." He then prescribed Lortab, and advised plaintiff to return in four to five months. (Tr. 123).

On October 30, 2003, plaintiff returned to Dr. Alkire's office. (Tr. 123). On examination, Dr. Alkire noted some tenderness along the medial joint line of the right knee, but no effusion. Although plaintiff was reportedly tolerating his pain symptoms, the doctor prescribed Lortab, to be

AO72A
(Rev. 8/82)

taken on an as needed basis. (Tr. 123).

On November 12, 2003, plaintiff was noted to have a history of a severe right knee injury and surgery for sleep apnea. (Tr. 145). The doctor indicated that plaintiff's right knee exhibited extremely limited flexion. Further, x-rays showed severe arthritic changes in the right knee. (Tr. 146). As such, he was diagnosed with a severely injured right knee. (Tr. 145).

On January 9, 2004, plaintiff reported severe lower back pain. (Tr. 144). The doctor noted a tender left lower paravertebral area. As such, plaintiff was diagnosed with degenerative joint disease and lumbar disc syndrome. (Tr. 144).

On January 30, 2004, plaintiff again sought medical attention for lower back pain. (Tr. 139). He indicated that he had bent over at work to pick up something, and felt an immediate pain in his lower back that radiated into his left leg. Plaintiff was diagnosed with lower back pain and a herniated disc in the lumbar spine with associated radicular pain. For this, he was given SoluMedrol, Demerol, and Valium injections. The doctor then prescribed Vicodin and Prednisone for him to take at home. (Tr. 140). He also restricted plaintiff to lifting nothing over ten pounds for at least two weeks. (Tr. 140).

On February 3, 2004, plaintiff went to the emergency room complaining of recurrent lower back pain. (Tr. 143). This was reportedly a flare-up of chronic disc problems. He was given Prednisone and pain medication, as well as a list of orthopedists to call. (Tr. 143).

On February 24, 2004, plaintiff complained of continued knee pain and pain in the lower back that radiated into his left lower extremity. (Tr. 157). X-rays of plaintiff's lumbar spine revealed

7

degenerative changes of the lower lumbar spine. (Tr. 155). Mild hypertrophic spurring was also noted at the L4-5 level. (Tr. 155). Further, an MRI showed mild degenerative disk disease at the L2-3 level through the L5-S1 level. (Tr. 156). Diminished signal intensity was also noted in this area. (Tr. 156). Overall, Dr. Konitzer concluded that the knee had improved and was relatively stable. (Tr. 157). However, he noted that plaintiff's back condition could be worsening. Dr. Konitzer diagnosed plaintiff with morbid obesity, osteoarthritis of multiple sites including the right knee and lumbar spine, and degenerative disk disease with possible lumbar facet disease. (Tr. 157). He noted that it was imperative that plaintiff lose a significant amount of weight, between 100 and 125 pounds. (Tr. 158).

On March 9, 2004, plaintiff presented at Dr. Konitzer's office for an epidural steroid injection ("ESI"). (Tr. 152). His MRI was said to have shown nothing more than degenerative disk disease. Dr. Konitzer explained that he could not guarantee results with the ESI, given the fact that plaintiff did not have a herniated disk or central or lateral stenosis. However, the doctor agreed to try this method of treatment since plaintiff was experiencing some radicular symptoms. (Tr. 153).

On June 7, 2004, plaintiff underwent an examination by Dr. Roshan Sharma. (Tr. 162-165). The doctor noted that he was an extremely large man with no readily apparent abnormalities. (Tr. 164). On examination, plaintiff had a restricted range of flexion in both knees. Accordingly, Dr. Sharma diagnosed him with lower back pain secondary to mild degenerative changes, sleep apnea, and significant arthritis of the knee. (Tr. 164-165).

Dr. Sharma also completed a physical RFC assessment. (Tr. 166). She concluded that

8

plaintiff could occasionally lift up to twenty pounds; sit six hours; stand and/or walk two hours; and, frequently use hands for simple grasping, fine manipulation, handling objects, feeling objects, pushing and pulling controls, and reaching. Dr. Sharma found that plaintiff could occasionally stoop. However, she indicated that he could never use his feet to operate controls, climb, balance, crouch, kneel, crawl, or be exposed to heights or moving machinery. In addition, Dr. Sharma stated that he should avoid concentrated exposure to vibrations. (Tr. 166).

In spite of this evidence, the ALJ failed to request an RFC assessment from plaintiff's treating physician. Instead, the ALJ, in concluding that plaintiff could perform a range of sedentary work, relied on RFC assessments completed by non-examining and examining medical consultants, who examined plaintiff on only one occasion, or not at all. We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). As such, we believe that remand is necessary to allow the ALJ to clarify Dr. Elsamaloty's statement recommending that plaintiff be awarded disability, and to obtain RFC assessments from plaintiff's treating physicians. (Tr. 86).

On remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records; to complete a physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v.*

9

*Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

Also of concern is the ALJ's failure to properly address the side effects of plaintiff's medications. Records indicate that plaintiff had been prescribed Vicodin, Flexeril, Ultram, and Motrin for pain relief. (Tr. 57). At the hearing, plaintiff testified that these medications made him drowsy, disoriented, and moody. (Tr. 182). Research has revealed that these are common side effects of these medications. *See* PHYSICIAN'S DESK REFERENCE 532, 1833 (60th ed. 2006). The ALJ did not, however, properly consider these side effects or the potential side effects that could result from mixing these medications. As such, we believe that remand is necessary to allow the ALJ to properly consider the side effects of plaintiff's prescription medications. *See Polaski v. Heckler,* 739 F.2d 1320, 1321-22 (8th Cir. 1984) (requiring the ALJ to consider the side effects of plaintiff's medications).

In addition, we note that the ALJ criticized plaintiff for failing to undergo knee replacement surgery. While plaintiff did refuse to do so, Dr. Chris Alkire agreed with plaintiff's decision. (Tr. 123). Given plaintiff's age and size, Dr. Alkire did not find surgery to be a "reasonable possibility" for plaintiff. (Tr. 125). The ALJ did not consider this fact, nor did he discuss the impact plaintiff's size had on his treatment options or his ability to perform work-related activities. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q; Social Security Ruling (SSR) 02-01p, 2000 WL 628049, at *1 (SSA, Sept. 12, 2002); *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). As such, on remand, the ALJ is directed to reconsider plaintiff's treatment compliance, as well as consider plaintiff's combination

10

of impairments to determine the role plaintiff's obesity played in his back and knee pain. *See* 42 U.S.C.A. § 423 (requiring the Secretary to consider the combined effect of all of an individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity to entitle that person to benefits); *Anderson v. Heckler*, 805 F.2d 801, 805 (8th Cir. 1986) (holding that ALJ is required to consider the combined effect of plaintiff's impairments).

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 1st day of February 2006.

/s Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

11

AO72A
(Rev. 8/82)